*E-FILED - 8/19/08*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RICHARD FRAZIER, | ) | No. C 06-2243 RMW (PR) |
| Petitioner, | ) ) | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| vs. | ) ) | |
| S.W. ORNOSKI, Warden, et al., | ) ) | |
| Respondents. | ) ) | |

Petitioner, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the California Board of Prison Terms ("Board") decision denying him parole. Petitioner initially filed his petition in the Central District of California. On March 30, 2006, the case was transferred to this court. The court ordered respondent to show cause why the petition should not be granted. Respondent has filed an answer addressing the merits of the petition, and petitioner has filed a traverse. Having reviewed the briefs and the underlying record, the court concludes that petitioner is not entitled to relief based on the claims presented and denies the petition.

# BACKGROUND[1]

On July 12, 1978, at the age of seventeen, petitioner arrived at a neighborhood market with three others. Petitioner and Lee Otis Williams got out and entered the market while the two other accomplices waited in the car. Williams was armed with a revolver. Williams attempted to rob the owner of the market, Robert Larkin. A gun battle ensued in which both Williams and Larkin were shot. Petitioner and Williams fled the scene of the crime via the awaiting car. Larkin died at the scene of the attempted robbery. Williams was left at a nearby hospital where he died of multiple gunshot wounds. Following his 1979 conviction for first degree murder with the use of a firearm, attempted robbery, and conspiracy to commit robbery, petitioner was sentenced to a term of seven years-to-life in state prison.

After a parole suitability hearing on March 4, 2004, the Board denied petitioner parole. Thereafter, petitioner filed a petition for a writ of habeas corpus in the Los Angeles County Superior Court, which was denied on November 12, 2005. Petitioner filed habeas petitions in the California Court of Appeal and in the California Supreme Court, both of which were denied. Petitioner filed the instant federal habeas petition in the Central District of California. On March 30, 2006, that case was transferred to this court.

# DISCUSSION

**A. Standard of Review**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the AEDPA, a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision

---

[1] The facts surrounding petitioner's commitment offense are drawn from Parole Consideration Hearing Transcript, March 4, 2004. Pet. Ex. J.

that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry), 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if the state court correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

Where, as here, the highest state court to consider the petitioner's claims issued a summary opinion which does not explain the rationale of its decision, federal review under § 2254(d) is of the last state court opinion to reach the merits. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991); Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000). In this case, the last state court opinion to address the merits of petitioner's claim is the order of the Los Angeles County Superior Court. Pet. Ex. L (In re Richard Fraizer,[2] Los Angeles County Superior Court Order re: Writ of Habeas Corpus, Case No. BH002886 (Nov. 12, 2004)).

**B. "Some Evidence" Standard**

Petitioner contends that the "some evidence" standard of review is "an inappropriate standard to apply to his claims" because "due process certainly demands a finding of something more than 'some' (any) evidence in the record. . . ." Traverse at 9. As discussed in more detail below, the "some evidence standard" is the applicable standard of review for gauging the constitutionality of parole suitability decisions by the

---

[2]In the instant action petitioner spells his name "Frazier," whereas the California Court of Appeal spelled his name "Fraizer."

1   Board. See Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1129 (9th Cir. 2006)
2   (adopting "some evidence" standard for disciplinary hearings outlined in Superintendent
3   v. Hill, 472 U.S. 445, 454-55 (1985) (hereinafter "Hill")); see McQuillion v. Duncan, 306
4   F.3d 895, 904 (9th Cir. 2002) (same); Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389,
5   1390 (9th Cir. 1987) (same). This court is bound by the Ninth Circuit precedent, and
6   therefore applies the "some evidence" standard to evaluate petitioner's due process claim.
7   **C. Due Process**
8       Petitioner asserts that his right to due process was violated by the Board's decision
9   denying him parole. He contends that because there is no evidence to support its finding
10  that he is unsuitable for parole, habeas relief should be granted.
11      1. The "Some Evidence" Standard
12      California prisoners have a constitutionally protected liberty interest in release on
13  parole and, therefore, they cannot be denied a parole date without the procedural
14  protections necessary to satisfy due process. McQuillion, 306 F.3d at 902. A parole
15  board's decision must be supported by "some evidence" to satisfy the requirements of due
16  process. Sass, 461 F.3d at 1128-29 (adopting some evidence standard for disciplinary
17  hearings outlined in Hill, 472 U.S. at 454-55). Accordingly, if the Board's denial of
18  parole in this case is to satisfy due process, there must be some evidence, with some
19  indicia of reliability, to support the decision. Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th
20  Cir. 2005). Whether the "some evidence" standard is satisfied "does not require
21  examination of the entire record, independent assessment of the credibility of witnesses,
22  or weighing of the evidence. Instead, the relevant question is whether there is any
23  evidence in the record that could support the conclusion reached by the [Board]." Hill,
24  472 U.S. at 455-56.
25      In assessing whether or not there is "some evidence" supporting the Board's denial
26  of parole, this court considers the regulations which guide the Board in making its parole
27  suitability determinations. California Code of Regulations, title 15, section 2402(a) states
28  that "[t]he panel shall first determine whether the life prisoner is suitable for release on

parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." The regulations direct the Board to consider "all relevant, reliable information available." Cal. Code of Regs., tit. 15, § 2402(b). Further, they list sets of circumstances tending to indicate whether or not an inmate is suitable for parole. Cal. Code of Regs., tit. 15, § 2402(c)-(d).[3]

"While subdivision (a) of section 3041 states that indeterminate life (i.e., life-maximum) sentences should 'normally' receive 'uniform' parole dates for similar crimes, subdivision (b) provides that this policy applies 'unless [the Board] determines' that a release date cannot presently be set because the particular offender's crime and/or criminal history raises 'public safety' concerns requiring further indefinite incarceration." In re Dannenberg, 34 Cal.4th 1061, 1070 (2005) (emphasis omitted). In sum, "the Board, exercising its traditional broad discretion, may protect public safety in each discrete case by considering the dangerous implications of a life-maximum prisoner's crime individually." Id. at 1071. The California Supreme Court's determination of state law is binding in this federal habeas action. Hicks v. Feiock, 485 U.S. 624, 629-30 (1988).

2. The Board's Decision Was Based on "Some Evidence"

Here, the Board articulated several factors that led to its conclusion that petitioner was "not yet suitable for parole and would pose an unreasonable risk of danger to society or threat to public safety if released from prison." Pet. Ex. J at 52. First, the Board considered petitioner's commitment offense and found that the murder was carried out "in

---

[3] The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. Cal.Code of Regs., tit. 15, § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. Cal.Code of Regs., tit. 15, § 2402(d).

a vicious, brutal manner" due to the multiple victims. Id.  The Board also found that petitioner's "motive for this crime [was] inexplicable and trivial." Id.  In addition, petitioner was on probation at the time of the commitment offense for a prior first degree murder conviction where petitioner, without provocation, shot a man at close range with a firearm. Id. at 53, 12-13.  Second, the Board found that the petitioner had an unstable social history evidenced by his "tumultuous relationships with others, dropping out of school and developing problems with substance abuse." Id.  Lastly, the Board noted that Petitioner "has failed to demonstrate evidence of positive change" during his incarceration. Id. at 54.  The Board found that petitioner's four 115 disciplinary write-ups, including the most recent one in 2002, showed that petitioner "has to learn to maintain the gains over an extended period of time." Id. at 55.

The Board did recognize petitioner's participation in self-help – including his involvement in Narcotics Anonymous, Anger Management, and others. Id.  Also, it commended petitioner for his obtaining excellent achievement reports for his employment while in prison. Id.  Nevertheless, the Board found that "all these positive aspects of his behavior don't outweigh the factors of unsuitability at this time." Id.

In its order denying habeas relief, the superior court determined that the Board's denial of parole was based on "some evidence". Pet. Ex. L. at 1.  The court agreed that the commitment offense was especially cruel because multiple victims were killed. Id. at 2. The court found that his prior conviction for first degree murder with a firearm at the age of fourteen evidences an escalating criminal record. Id.  Next, the court found that petitioner's four violations showed "serious misconduct during incarceration. Id.  Lastly, the court agreed that the factors cited by the Board demonstrating petitioner's unstable social history amounted to "some evidence" of petitioner's unsuitability. Id.  The California Court of Appeals and California Supreme Court denied petitioner's habeas petition.

    a. <u>Petitioner's Commitment Offense and Prior Record</u>

As described above, the Board's decision was first based on two unchanging, pre-

incarceration factors: petitioner's commitment offense and petitioner's prior criminal history. Petitioner correctly asserts that Ninth Circuit case law has cautioned that the weight of these factors fades over time as a predictor of parole suitability. See Biggs v. Terhune, 334 F.3d 910, 917 (9th Cir. 2003) . In Irons v. Carey, 505 F.3d 846 (9th Cir. 2007), the Ninth Circuit clarified Biggs as follows: "All we held in [Biggs] and all we hold today, . . . is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms." 505 F.3d at 854-55. Therefore, at some point after an inmate has served the minimum term of his sentence, his commitment offense and prior record cease to amount, on their own, to "some evidence" that the petitioner poses an "unreasonable risk of danger to society" and is not suitable for parole. See id. at 854.

  This court must consider whether, in this case, given the severity of petitioner's commitment offense and his priors, enough time has past beyond petitioner's minimum term that such factors may not be considered "some evidence" in support of the Board's decision. Petitioner was convicted in 1978 and found unsuitable by the Board twenty-six years later in 2004 and nineteen years after the expiration of the minimum seven years term of his sentence. Although petitioner had been incarcerated well beyond his minimum term of seven years, Biggs addressed the modern sentence for first degree murder which has a minimum term of twenty-five years. Biggs, 334 F.3d at 917; see Cal. Penal Code § 190(a). Thus, when, in Biggs and Irons, the Ninth Circuit cautioned that pre-incarceration factors could cease to be reliable predictors of future dangerousness at some point after the prisoner's minimum term had elapsed, the court allowed consideration of the first degree murder conviction and prior criminal record at least up to twenty-five years after the conviction. Furthermore, the Ninth Circuit has set no bright line rule as to how much time beyond the minimum term the Board could consider such factors.

  In the instant case, petitioner had served twenty-six years, only one year beyond

the modern minimum term, when the Board denied parole.  To be sure, petitioner was young when he committed both the commitment offense and the priors – fourteen and seventeen years old, respectively.  Pet. Ex. J at 11, 8.  However, petitioner was convicted of two first degree murders in a three-year time span.  Pet. Ex. J at 11, 8.  Additionally, even twenty-six years later, petitioner has yet to take responsibility for the commitment offense un that he insists that he "had no personal involvement in the killings."[4]  Traverse at 15.  Given the highly serious nature of his commitment offense and prior record – amounting to two first degree murder convictions, the use of a firearm, and attempted armed robbery -- this court cannot say petitioner had reached the point that these facts no longer evince a risk of danger to society and parole unsuitability.  Thus, the Board could properly rely on petitioner's commitment offense and prior record in this case to support its decision.

### b. Other Factors

The denial of parole was also supported by additional evidence.  In addition to petitioner's commitment offense and prior record, the Board found petitioner unsuitable for parole on the basis of two factors specifically articulated in the regulations that guide the Board's parole suitability determination: that petitioner "has a history of unstable or tumultuous relationships with others," and that petitioner "has engaged in serious misconduct in prison or jail."  Pet. Ex. J at 53-53; Cal.Code of Regs. tit. 15, § 2402(c)(3), (c)(6).  There was "some evidence" supporting both of these findings.

Petitioner's unstable social history was demonstrated by an escalating pattern of criminality.  When he was eleven years old, petitioner's mother suffered a stroke that paralyzed her.  RT at 14.  Then, three years later, his parents separated.  RT at 14.  At that time, petitioner recalls he was "like a stray dog" with "nobody to guide [him.]"  RT at 17.

---

[4] Petitioner also avoids responsibility for the commitment offense by urging that even though he entered the neighborhood market after having planned to commit a robbery and with the knowledge that his crime partner was armed, petitioner argues he "thought the robbery was called off and had no advance knowledge" that either his partner or the victim would be shot.  Traverse at 15.

Order Denying Petition for Writ of Habeas Corpus
G:\PRO-SE\SJ.Rmw\HC.06\Frazier243den.wpd            8

Petitioner compensated by hanging out with older people and abusing drugs. Petitioner began using marijuana daily at age eleven, pills at age thirteen, and PCP a year before the commitment offense . RT at 16. He dropped out of school by the seventh grade. RT at 14. By age fourteen, petitioner had committed a first degree murder with a firearm. RT at 11. Petitioner was subsequently evaluated by the Youth Authority has having "a history of poor schooling and occupational performance with heavy substance abuse and a propensity for criminal behavior." RT at 16. These conclusions were later confirmed by a psychiatric diagnosis for Adult Antisocial Personality Disorder. Resp. Ex. 6 at 4. Not more than three years after committing his first murder, Petitioner was convicted of another first degree murder for the commitment offense.

Only after being forced into the rigid structure of life in prison did petitioner begin to demonstrate his ability to conduct himself in relative conformity with societal norms. Petitioner attended self-help programs for managing his anger and substance abuse and he earned his GED. Yet, as the Board noted, Petitioner failed to exhibit sufficient positive change during his incarceration. <u>Id.</u> at 54. For example, despite having been in Alcoholic's and Narcotic's Anonymous since 1987 or 1988, petitioner was unable to satisfactorily describe the steps to the program. RT at 27-28. Also, he failed to provide a realistic plan to incorporate those steps into his post-release life. RT at 28. Second, during his time at San Quentin State Prison in 1988, petitioner was placed in administrative segregation "due to involvement in an inter-racial riot and possession of a weapon. . . ." Resp. Ex. 4 at 3. Further, Petitioner received four disciplinary write-ups, including one for manufacturing alcohol and another fairly recently in 2002, as well as five 128 disciplinary warning notices.[5] RT at 30. These numerous "blemishes" on

---

[5] Petitioner's Life Prisoner Evaluation Report notes that petitioner's disciplinary history may be incomplete due to the loss of his "Central File" in 1989. Resp. Ex. 4 at 3. The record indicates that petitioner may have had more problems conducting himself while incarcerated than those instances acknowledge by the Board. Petitioner's 1999 psychological evaluation, taken three years before his most recent 115 disciplinary write up, stated that at that time petitioner had received a total of six 115s. Resp. Ex. 6 at 6. Nevertheless, for purposes of the instant petition, the court only considers the four 115s referenced by the Board.

petitioner's prison record indicate that he continues to be unable to avoid reprimands for behavioral misconduct even within the confines of the controlled prison environment. RT at 58. Noting petitioner's inability to conduct himself appropriately in his unstructured pre-conviction life and his continuing difficulty to manage his behavior even in the highly regimented prison environment, the Board reasonably concluded that petitioner "continues to be unpredictable and a threat to others[.]" RT at 55. Petitioner's unstable social history and his record of behavioral misconduct while in prison provide "some evidence" supporting the Board's conclusion that petitioner "would pose an unreasonable risk of danger to society or a threat to public safety if released from prison at this time" and is, therefore, unsuitable for parole. RT at 52.

3. Conclusion

In light of petitioner's serious commitment offense and prior criminal record, as well as his unstable social history and behavior in prison, the state courts' determination that there was some reliable evidence to support the Board's decision to deny parole, was not contrary to or an unreasonable application of federal law. Accordingly, the denial of parole did not violate his right to due process.

**D. Petitioner's Proportionality Claim**

Petitioner next claims that under California Penal Code section 3041, he is entitled to a parole release date in proportion with prisoners having committed similar commitment offenses. Pet. at 9. In support of his argument, petitioner cites the subsection of that statute which states: "The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public. . . ." Cal. Pen Code § 3041(a). He then recites an extensive list of those prisoners sentenced around the same time as he had been, for the same crime, but who have been released, for the proposition that his release date should be set in proportion to these allegedly similarly situated offenders. Pet. at 9-10. However, petitioner is mistaken in his reliance on this statute because under California law "a life prisoner must first be found suitable for parole before a parole date is set." In re

1  Stanworth, 33 Cal. 3d 176, 183 (Cal. 1982).  In California's statutory scheme, the setting
2  of a fixed date designed to ensure term uniformity is not reached unless and until the
3  prisoner is found suitable for parole.  In re Dannenberg, 34 Cal. 4th 1061, 1070-71
4  (2005); see also 15 Cal. Code Regs. § 2403(a) ("[t]he panel shall set a base term for each
5  life prisoner who is found suitable for parole").  The California Supreme Court's
6  determination of state law in Dannenberg is binding in this federal habeas action.  See
7  Hicks v. Feiock, 485 U.S. 624, 629-30 (1988).  In this case, as the Board did not find
8  petitioner suitable for parole, he is not entitled to a "uniform" release date pursuant to
9  Cal. Pen. Code § 3041(a).  Thus, petitioner's proportionality argument fails.

## CONCLUSION

For the foregoing reasons, petitioner has failed to show any violation of his federal constitutional rights in the underlying state court proceedings and parole hearing. Accordingly, the petition for writ of habeas corpus is DENIED.  The clerk shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: __8/18/08_____

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge